CY GOLDBERG ○+*^
LORI C. MILLER ○+
JASON W. RUBIN ○+*
EAMON C. MERRIGAN ○+
RICHARD M. CASTAGNA ○+*
MATTHEW A. MORONEY ○+*
CLAIRE B. NEIGER ○+ ^
KRISTINE MEINDL ○+
JOSEPH W. PETKA ○
WARREN D. HOLLAND ○+*
DANA M. KOOS *
LUCILLE BITTERMAN ○+
IAN T. KINGSLEY ○+*
JEFFREY E. TENTHOFF ○+
JILLIAN VUKSON ○

○+VIRGINIA KING
○+ JOHN C. KRAWCZYK
+* ALEXANDER W. COGBILL
○+ JOEL H. FEIGENBAUM
○ LAUREN B. GLYNN
○+ JEREMY B. TOLL
○+ JESSICA SMERIGLIO
○ TYSON M. MOTT
* MATTHEW D. LAVOIE
○ ELIZABETH R. BOINO
○+ BRANDON EVANGELIST
○+ BRETT A. KIER
+* SAMANTHA PULLMAN
○+KATELYN HUTCHISON
○ KEVIN CARTER



GOLDBERG, MILLER & RUBIN

121 S. BROAD STREET, SUITE 1600, PHILADELPHIA, PA 19107
PH 215.735.3994 | FAX 215.735.1133 | WWW.GMRLAWFIRM.COM

January 17, 2018

**VIA ECF FILING**
The Honorable Vera M. Scanlon
United States District Court Eastern District of New York
225 Cadman Plaza East, Brooklyn, NY 11201

    **Re: State Farm Mut. Auto. Ins. Co., et al v. Boris Ripa, M.D., et al**
      **Docket Number:  1:17-cv-03202**
      **Our File Number:  SF.00073**

Dear Judge Scanlon:

  My firm represents State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Company, and State Farm Indemnity Company. For the reasons set forth below, the Defendants' objections to Plaintiffs' subpoenas should be overruled.[1]

  **I. Background**

  This case involves a medical fraud scheme that took place at 522 Lefferts Avenue in Brooklyn ("522 Lefferts") from March 2013 through June 2014.[2] *(See Exhibit "A" for the Complaint)*. Before the scheme took root at 522 Lefferts, it operated at a different location, 540 East New York Avenue in Brooklyn. *(See Exhibit "A")*. Plaintiffs contend that Defendant, Rita Vayman[3] was instrumental in moving the healthcare providers, and the fraudulent scheme, to 522 Lefferts. *(See Exhibit "A")*.

  Dr. Boris Ripa, however, is a pediatrician who had no experience with accident patients. Nonetheless, Ms. Vayman and the other Defendants were able to convince Dr. Ripa to join them, as they needed a physician to properly implement the scheme. *(See Exhibit "A")*. Although he served as the ostensible owner of All Healthy Style Medical,

---

[1] As an initial matter, Judge Garaufis recently held a conference on this case, along with State Farm Mut. Auto. Ins. Co., et al. v. Lefferts Medicine, P.C, et. al., case no. 17-cv-3200. At the conference, defense counsel requested permission to file motions to dismiss. In response, although he did not prohibit the motions, upon his review of the Complaints, Judge Garaufis stated, "I am not going to stay discovery. You are going to have your discovery because I have a very strong suspicion that this needs to be vetted in discovery." *(See Exhibit "B" for the hearing transcript on December 12, 2017)*.

[2] After reviewing the Complaint, Judge Peggy Kuo indicated that she found "the Complaint was quite detailed." *(See Exhibit "C" for the applicable portion of the Initial Conference)*.

[3] Plaintiffs contend that Ms. Vayman is a layperson without any medical licensure.

P.C., in reality, Dr. Ripa permitted Ms. Vayman, and possibly other laypersons, to use his name to implement and carry out the fraud scheme. *(See Exhibit "A").*[4]

Additionally, as described in the Complaint, although the other defendants, Galina Groysman, Serge Chiropractic Services, P.C., Liliya Veksler, Liliya Veksler, LCSW, P.C., Xiaobin Ye, L.Ac., and 3Y Acupuncture, P.C. purportedly subleased and/or rented space, these agreements lacked the formalities generally associated with commercial lease agreements. *(See Exhibit "A").* Moreover, there was no signage on the exterior of the facility to suggest that the other Defendants even did business there. *(See Exhibit "A").* These providers also did little, if any, advertising to generate their own business and claimed to not know how patients arrived at the clinic or how they generated their business. *(See Exhibit "A")*. In reality, Plaintiffs contend, these providers gained access to patients by virtue of financial relationships and their agreement to implement the fraud scheme described in this Complaint. *(See Exhibit "A").*

As part of the scheme, at the direction of Ms. Vayman and the front desk staff, almost every individual who presented to 522 Lefferts received medical, physical therapy, chiropractic services, acupuncture services, mental health services, medical testing, **and** durable medical equipment ("DME"). *(See Exhibit "A").* Pursuant to the scheme, these providers documented fraudulent patient findings to justify the purported need for care. As noted in the Complaint, when reviewed collectively, the records of the Defendants reveal pervasive patterns of fabricated patient findings, as well as unnecessary treatment, testing, and DME. *(See Exhibit "A").* These patterns are not credible and highly implausible as they appear across a wide range patients for whom ages, pre-existing conditions, types of accident, mechanisms of injury, and a host of other important factors vary markedly. *(See Exhibit "A").* Based on these fraudulent patient findings (and the purported need for care), the Defendants provided the same treatment, testing, and DME to almost every patient. *(See Exhibit "A").* This extensive combination of treatment would rarely be appropriate for any one patient's unique needs, let alone every patient. Rather, the types of treatments, as well as the frequency and duration of the various treatments, should vary depending on the unique circumstances of each patient. The Defendants conspired and worked together with a common purpose to carry out this scheme for financial gain, rather than any legitimate medical reason. *(See Exhibit "A").*[5]

Apparently concerned that their scheme was being investigated, the participants, in or around mid-2014, were replaced with new professional corporations and providers. For example, Dr. Ripa purportedly closed his thriving professional corporation treating accident patients and was replaced with a new physician (Dr. Yang Zhigang), who opened a new corporation (Lefferts Medicine, P.C.). This makes no sense. This continuation of the scheme is the focus of the <u>State Farm Mut. Ins. Co., et al. v. Lefferts Medicine, P.C. et al</u>, case no. 17-cv-3200. *(See Exhibit "B" for the Amended Complaint in <u>State Farm v. Lefferts Medicine, P.C.</u>).*

---

[4] As noted in the Complaint, Dr. Ripa was rarely present at the clinic, and most, if not all, services billed by All Healthy Style were provided by other individuals. During sworn testimony, Dr. Ripa had difficulty even reciting the names of his purported employees and evidenced a lack of knowledge concerning the affairs of his purported practice. *(See Exhibit "A").*

[5] State Farm is not alone in these allegations. GEICO brought a fraud suit against these Defendants in <u>GEICO v. Ripa, et al</u> (1:16-cv-2122). As alleged in that Complaint, the true ownership over the healthcare practice rested in layperson control. Additionally, that Complaint indicates Dr. Ripa was arrested and charged with burglary in Miami, Florida in 2017. In spite of being detained in Florida, All Healthy Style continued to submit bills in his name.

**II.     Legal Authority**

The federal courts universally hold that bank and financial records are relevant and discoverable in cases involving allegations of fraud. See State Farm Mut. Auto. Ins. Co. v. Fayda, 2015 WL 7871037, at *3 (S.D.N.Y. Dec. 3, 2015) (noting that "[c]ase law indicates that evidence of a defendant's motive for participation in a fraudulent medical billing scheme is relevant to such claims and that financial documents like these are discoverable to establish that motive"); see also State Farm Mut. Auto. Ins. Co. v. CPT Medical Services, P.C., 375 F. Supp. 2d 141, 155-56 (E.D.N.Y. 2005) (holding that financial records "may be relevant to establishing that defendants profited from their willingness" to order medically-unnecessary tests); State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic and Rehab Clinic, P.C., 2015 WL 4094115, at * 6 (E.D. Mich.) (compelling disclosure of personal tax returns and bank records in case involving similar allegations of fraud); State Farm Mutual Automobile Insurance Co. v. McGee, No. 10 CV 3848, 2012 WL 8281725, at *2 (E.D.N.Y. Feb. 21, 2012) (holding that financial records sought to establish healthcare provider financially dependent on co-defendants "relevant to demonstrate his motive in participating in the fraud," among other things); MedCity Rehab. Servs., LLC, 2013 WL 1898374, at *6–7 (permitting discovery regarding corporate bank accounts in similar case by insurance company alleging fraudulent billing practices by medical providers,); State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc., No. 12–11500, 2013 WL 10572229, at *3 (E.D.Mich. Aug.13, 2013) (requiring disclosure of bank records, including accounts held jointly with non-party wives in case for alleged fraudulent billing practices by medical providers); State Farm Mut. Auto. Ins. Co., et. al. v Stavropolskiy, et. al, 2017 WL 1493032 (E.D. Pa).

**III.    Analysis**

Instantly, Plaintiffs allege that Ms. Vayman was instrumental in bringing over providers to 522 Lefferts and convincing Dr. Ripa to lend his medical license to the scheme. The bank and financial records, therefore, are particularly relevant and material to determine who controlled the scheme, to identify the specific financial agreements between the Defendants, and to identify each Defendant's motive for participating in the scheme. State Farm Mut. Auto. Ins. Co. v. Fayda, 2015 WL 7871037 ("[c]ase law indicates that evidence of a defendant's motive for participation in a fraudulent medical billing scheme is relevant to such claims and that financial documents like these are discoverable to establish that motive.").

Defendants argue that discovery of bank and financial records is not appropriate absent allegations of kickbacks[6], improper fee splitting, or in non-RICO cases.[7] Not only

---

[6] In spite of defense counsel's claims, the Complaint does plead disguised kickbacks. The Complaint indicates that the Defendants entered into purported sublease/rent agreements with each other, which lacked the formalities generally associated with commercial lease agreements. *(See Exhibit "A").* In reality, these providers gained access to patients by virtue of financial relationships and their agreement to implement the fraud scheme described in this Complaint. The bank and financial records are relevant to flesh out these purported agreements and payments, which are believed to be nothing more than disguised kickbacks.

[7] Defendants also incorrectly argue that the Complaint does not make any State Farm v. Mallela, 4 N.Y. 3d 313 (2005) type allegations. Instead, the Complaint specifically alleges that "although Ripa is the ostensible owner of All Healthy Style, he had no experience … to use his name to implement and carry out the no-fault scheme described herein." The Complaint also cites the applicable law recognized by the court in Mallela that

did Defendants fail to cite any legal support, these arguments were recently dismissed by a federal court in the Eastern District of Pennsylvania. In State Farm Mut. Auto. Ins. Co., et. al. v Stavropolskiy, et. al, 2017 WL 1493032 (E.D. Pa), the court held:

> This case is distinguishable, according to the Medical Parties, because here there is no alleged RICO violation and no allegation of any broader conspiracy of inappropriate referrals or "kickbacks" that would justify the discovery of financial records.
>
> We agree with State Farm that the Medical Parties' corporate and financial records are discoverable in this case. State Farm alleges that the Medical Parties implemented a scheme to defraud State Farm for the personal financial benefit of Dr. Stavropolskiy and Dr. Wang. The interrogatories and requests for production at issue are reasonably calculated to discover evidence showing the Medical Parties' motive to engage in fraud. See Fayda, 2015 WL 7871037, at *3 ("It would be an unlikely trial strategy for the plaintiff to argue to the fact-finder that the … Defendants participated in the fraud … for financial gain but then fail to put on evidence of such gain.").

Additionally, the subpoenas not only seek relevant and material documents, but they clearly are proportional to the needs of this case. As noted in the case cited in Defendants' letter brief, Sky Medical Supply, Inc. v SCS Support Claim Services, Inc., "the party resisting disclosure should bear the burden of establishing alternative sources for the information." 2017 WL 1133349 (E.D. N.Y.).[8] Additionally, "once the requesting party has made a *prima facie* showing of relevance, 'it is up to the responding party to justify curtailing discovery'". Id. (citing Fireman's Fund Ins. Co. v. Great American Ins. Co. of NY, 284 F.R.D. 132 (S.D.N.Y. 2012)). Here, the proposed subpoenas pose no burden on the Defendants, the Defendants have offered no alternative sources where Plaintiffs can obtain this relevant information, nor have they presented any argument that the proposed discovery is not proportional to the needs of this case. To the contrary, the subpoenas are narrow in scope and are proportional to a lawsuit seeking damages in excess of $300,000.00.[9]

For all the reasons cited above, Defendants' objections should be overruled.

Respectfully submitted,

*Matthew Moroney*

MATTHEW MORONEY

MM/aa

cc: Maria E. Rodi, Esquire **(via ECF Filing)**

---

"pursuant to the No-Fault Laws, professional corporations are not eligible to bill for or collect No-Fault Benefits if they were unlawfully incorporated."

[8] In Sky Medical Supply, Inc. v SCS Support Claim Services, Inc., 2017 WL 1133349 (E.D. N.Y.), the court indicated that the subpoenas seeking bank records were relevant and discoverable.

[9] The Defendants also rejected all efforts to resolve this discovery dispute and instead sought the Court's intervention.